**AHDOOT & WOLFSON, P.C.**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
1016 Palm Avenue
West Hollywood, CA  90069
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

**BARBAT, MANSOUR & SUCIU PLLC**
Nick Suciu III (*pro hac vice* application forthcoming)
434 West Alexandrine #101
Detroit, Michigan 48201
Tel: (313) 303-3472
Email: nicksuciu@bmslawyers.com

Counsel for Plaintiff
  CHARITY BUSTAMANTE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARITY BUSTAMANTE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KIND LLC, a Delaware Limited Liability Company, and DOES 1-10,<br><br>Defendants. | Case No. **'15CV0891 JAH  JMA**<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Charity Bustamante ("Plaintiff"), by and through her counsel, brings this Class Action Complaint against Kind LLC ("Defendant") on behalf of herself and all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      This is a consumer protection and false advertising class action concerning Defendant's false and/or unlawful labels on its "KIND" bars and snack products including (1) Almond & Apricot, (2) Nut Delight, (3) Blueberry Vanilla & Cashew, (4) Fruit & Nut Delight, (5) Apple Cinnamon & Pecan, Almonds & Apricots in Yogurt, (6) Peanut Butter & Strawberry, (7) Almond & Coconut, (8) Almond Coconut Cashew Chai, (8) Fruit & Nuts in Yogurt, (9) Almond Walnut Macadamia With Peanuts + Protein, (10) Pomegranate Blueberry Pistachio + Antioxidants, (11) Blueberry Pecan + Fiber, (12) Dark Chocolate Cherry Cashew + Antioxidants, (13) Peanut Butter Dark Chocolate + Protein, (14) Cashew & Ginger Spice, (15) Dark Chocolate Chili Almond, (16) Maple Glazed Pecan & Sea Salt, (17) Madagascar Vanilla Almond, (18) Dark Chocolate Cinnamon Pecan, (19) Dark Chocolate Mocha Almond, (20) Caramel Almond & Sea Salt, (21) Dark Chocolate Nuts & Sea Salt, (22) Salted Caramel & Dark Chocolate Nut, (23) Dark Chocolate Chunk, (24) Maple Pumpkin Seeds with Sea Salt, (25) Oats & Honey with Toasted Coconut, (26) Vanilla Blueberry, (27) Peanut Butter Dark Chocolate, (28) Maple Quinoa Clusters with Chia Seeds, (29) Cinnamon Oat Clusters with Flax Seeds, (30) Peanut Butter Whole Grain Clusters, (31) Vanilla Blueberry Clusters with Flax Seeds, and (32) Fruit & Nut Clusters (collectively, the "Products").

2.      As alleged in more detail below, at least four of the Products — Almond & Apricot, Almond & Coconut, Peanut Butter Dark Chocolate + Protein, and Dark Chocolate Cherry Cashew + Antioxidants — are misbranded in violation of the Federal Food, Drug and Cosmetic Act ("FDCA") for the reasons set forth in a warning letter

that the FDA sent to Defendant on or about March 17, 2015.  A copy of this letter is attached as Exhibit A, and it is available through the FDA's website at: <http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm440942.htm> (last visited April 21, 2015).

3.      In addition, Defendant falsely and prominently labels the Products as "All Natural" and "Non GMO," while manufacturing the Products with genetically modified and non-natural, highly processed ingredients including soy lecithin, soy protein isolate, and canola oil.

4.      Plaintiff brings claims against Defendant individually and on behalf of classes of all other similarly situated purchasers of the Products for: (1) breach of express warranties; (2) violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (3) violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; and (4) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

5.      Plaintiff seeks an order requiring Defendant to, among other things: (1) cease the unlawful marketing; (2) conduct a corrective advertising campaign; (3) comply strictly with the FDCA, 21 U.S.C. § 301, *et seq.*, and regulations issued in accordance with the FDCA; and (4) pay damages and restitution to Plaintiffs and Class members in the amounts paid to purchase the products at issue.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed $5,000,000, exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

7.      This Court has personal jurisdiction over Defendant because it conducts business in California and otherwise intentionally avails itself of the markets in California to render the exercise of jurisdiction by this Court proper. Defendant has

marketed, promoted, distributed, and sold the Products in California.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiff purchased the Products in this District and Defendant markets, promotes, distributes and sells the Products in this District.

## PARTIES

9.      Plaintiff is a resident of Los Angeles County, California, who used to reside in San Diego County and purchased the Products in San Diego County, most recently at Target in Poway, California.

10.     Defendant Kind LLC is a Delaware Limited Liability Company. Upon information and belief, Defendant's principal place of business is located in New York. Defendant manufactures, promotes, markets, and distributes the Products to consumers throughout California and the United States.

11.     Plaintiff is unaware of the true names and capacities of the defendants sued as DOES 1-10, and therefore sues these defendants by fictitious names. Plaintiff will seek leave to amend this Complaint when and if the true identities of these DOE defendants are discovered. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a DOE is responsible in some manner for the acts and occurrences alleged herein, whether such acts or occurrences were committed intentionally, negligently, recklessly or otherwise, and that each said DOE defendant thereby proximately caused injuries and damages to Plaintiff as herein alleged, and is thus liable for the damages suffered by Plaintiff.

## SUBSTANTIVE ALLEGATIONS

**A.     Defendant's False "All Natural" and "Non GMO" Label Claims**

12.     Defendant falsely and prominently labels the Products as "All Natural" and "Non GMO."

13.     First, the Products are not "All Natural" or "Non GMO" because they all include ingredients that are sourced from genetically-modified crops, such as soy

lecithin,[1] soy protein isolate,[2] and/or canola oil.[3]  A genetically modified crop is a crop whose genetic material has been altered by humans using genetic engineering techniques.  The World Health Organization defines genetically modified organisms ("GMOs"), which include GM crops, as "organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally."  GMO crops are not natural, but man-made.  There are wide-ranging controversies related to GMO crops, including health risks from ingesting GMO foods and negative environmental effects associated with growing GMO crops.  The use and labeling of GMO foods is the subject of a variety of laws, regulations, and protocols worldwide.

14.    Second, in addition to Defendant's use of ingredients derived from GMO crops in the Products, Defendant's "All Natural" claim is false because Defendant includes soy lecithin, soy protein isolate, canola oil, glucose, and certain other ingredients in the Products that are, in fact, synthetic and highly processed additives — not "All Natural" ingredients.

15.    Defendant places the "All Natural" and "Non GMO" claims conspicuously and prominently on the front of the Products' packaging for every person to see as soon as they pick up the Products to read it.  For instance, on Defendants' bars Defendant places these claims as the first of several deceptive

///

///

---

[1] Contained in nearly all of the Products.

[2] Contained in at least the following Products: Almond Walnut Macadamia With Peanuts + Protein; Peanut Butter Dark Chocolate + Protein; Peanut Butter Whole Grain Clusters; and Fruit & Nut Clusters.

[3] Contained in at least the following Products: Dark Chocolate Chunk; Maple Pumpkin Seeds with Sea Salt; Oats & Honey with Toasted Coconut; Vanilla Blueberry; Maple Quinoa Clusters with Chia Seeds; Cinnamon Oat Clusters with Flax Seeds; Vanilla Blueberry Clusters with Flax Seeds; Fruit & Nut Clusters

checkmarks directly below the brand name, touting the Products' claimed benefits, as shown in the following example:



16.     Upon information and belief, Defendant uses hexane-processed soy lecithin, soy protein isolate, and canola oil in the Products.  Hexane is a constituent of gasoline obtained from crude oil, natural gas liquids, or petroleum refinery processing. As recognized by the United States Occupational Safety and Health Administration ("OSHA"), hexane is a neurotoxin, which can cause irritation to the eyes and upper respiratory tract.  Commercial hexane also contains benzene, a known hematologic poison linked to chronic leukemia.  Although Defendant discloses these ingredients on

the lists of ingredients on its Products, Defendant fails to disclose that it uses hexane-processed, GMO soy lecithin, soy protein isolate, and canola oil.

17.     Although the Products are not "All Natural" or "Non GMO," Defendant prominently labels the Products as such because consumers perceive all natural foods as better, healthier, and more wholesome.  In fact, the market for all natural foods has grown rapidly in recent years, a trend that Defendant exploits through its false advertising.

18.     Any consumer who purchased the Products — irrespective of their motivation for purchasing the Products — suffered harm in the form of a higher price that Defendant was able to command for the Products based on the false representations that they are "All Natural" and "Non GMO."

19.     By conspicuously and prominently placing the "All Natural" and "Non GMO" representations on the Products' packaging, Defendant has ensured that all consumers purchasing the Products are exposed to these claims.

20.     Genetically modified crops do not occur in nature, and are crops that are genetically manipulated from their natural state. Monsanto, one of the largest producers of genetically modified crop seed, defines genetic modification (or genetic engineering) to mean "[t]he technique of removing, modifying or adding genes to a living organism via genetic engineering or other more traditional methods.  Also referred to as gene splicing, recombinant DNA (rDNA) technology or genetic engineering." <http://www.monsanto.com/newsviews/pages/glossary.aspx#g> (last visited April 21, 2015).  Monsanto also defines Genetically Modified Organisms ("GMO") as "[p]lants or animals that have had their genetic makeup altered to exhibit traits that are not naturally theirs.  In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism." *Id.*

21.     The World Health Organization's ("WHO") definition of GMO is consistent with Monsanto's definition:  "Genetically modified (GM) foods are foods derived from organisms whose genetic material (DNA) has been modified in a way that

does not occur naturally, e.g. through the introduction of a gene from a different organism." <http://www.who.int/topics/food_genetically_modified/en/> (last visited April 21, 2015).  WHO also cautions that "All GM foods should be assessed before being allowed on the market." *Id.*

22.     Romer Labs, a company that provides diagnostic services to the agricultural industry, including tests to detect and determine the existence of GM crops, defines GM crops as "[a]griculturally important plants [that] are often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to express novel traits that normally would not appear in nature, such as herbicide or insect resistance. Seed harvested from GMO plants will also contain these modifications." <http://www.romerlabs.com/en/knowledge/gmo/> (last visited  Jan. 15, 2015).

23.     The United States Department of Agriculture ("U.S.D.A") estimates that, as of 2014, approximately 94% of soybeans grown in the United States are genetically modified, as are over 80% of U.S. canola crops.[4]

24.     The market for natural products is large and ever growing and consumers are willing to pay a premium for products they believe to be natural, healthy, and/or free of GMOs.

25.     Upon information and belief, the soy lecithin, soy protein isolate, and canola oil used as ingredients in the Products have been produced from GMO soybeans or canola during the four-year period preceding the filing of this Complaint.

26.     Independent of the use of GMO crops in the Products, Defendant's "All Natural" claims are false because the Products contain ingredients that are synthetic and so heavily processed that they no longer are chemically the same as the raw

_____

[4] <http://www.ers.usda.gov/media/185551/biotechcrops_d.html> (last visited Jan. 15, 2015)*; see also* http://www.huffingtonpost.com/margie-kelly/genetically-modified-food_b_2039455.html (last visited Jan. 15, 2014); *see also* Economic Research Service, USDA, Genetically engineered varieties of corn, upland cotton, and soybeans, by State and for the United States, 2000-14 (alltables.xls), <http://www.ers.usda.gov/data-products/adoption-of-genetically-engineered-crops-in-the-us.aspx#.VBcWqC5dWyR> (last visited  Jan. 15, 2015).

ingredients.

27.     Soy lecithin, for example, is used in food as an emulsifier, lubricant, and preservative. Soy Lecithin is extracted from soybeans by immersing them in hexane before further processing. Soy lecithin's chemical manufacturing process places it outside of reasonable consumer's definition and understanding of "All Natural."

28.     Soy protein isolate also is produced using hexane extraction, followed by further heavy processing.

29.     Unlike truly natural products such as cold-pressed, extra virgin olive oil, industrially produced canola oil also is produced using hexane extraction, and then is put through a complex refining process during which such oils is treated with various chemicals and acids, run through one or more centrifuges, bleached, and deodorized. The heavy processing is necessary to remove (at least some) dangerous toxins and impurities left in crude canola oil from the hexane processing, but also removes natural components of the oil such as vitamins, chlorophyll, flavor, aroma, and oxygen.

30.     The U.S. Department of Agriculture ("USDA") takes into account the level of processing in its policy on natural claims on food labeling, in guidance it has provided for the labeling of meat and poultry.  In such guidance, the USDA allows such products to be labeled "natural" when "(1) The product does not contain any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 C.F.R. 101.22), or any other artificial or synthetic ingredient; and (2) the product and its ingredients are not more than minimally processed.  Minimal processing may include those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting. . . . Relatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing." USDA, FOOD STANDARDS AND LABELING POLICY BOOK, *available at* <http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf>

(last visited April 21, 2015).

31.     Upon information and belief, Defendant knew and intended that consumers would pay a price premium for the Products if they were labeled "All Natural" and/or "Non GMO."

**B.     The Products are Misbranded in Violation of the FDCA**

32.     A copy of the FDA's warning letter to Defendant dated March 17, 2015 (the "FDA Warning Letter"), is attached hereto as Exhibit A, and is incorporated by reference.

33.     Despite Defendant's long-term use of the term "healthy" and related claims on the labels of the Products, none of the Products identified in the FDA Warning Letter meet the requirements for use of the "healthy" claim set forth in 21 CFR 101.65(d)(2).

34.     The term "plus" is defined in 21 CFR 101.54(e), and is defined more specifically in connection with protein claims, such as those made by Defendant on certain of the Products, as described in Paragraphs 1-2, above.  However, as stated in the FDA Warning Letter, the Products do not meet the requirements for such use of the "plus" claim.

35.     Similarly, certain of the Products use the term "antioxidant" in their labels, but do not meet the requirements for use of that term under 21 CFR 101.54(g).

36.     Also as described in the FDA Warning Letter, certain of the Products are misbranded within the meaning of 21 U.S.C. § 343(r)(2)(A)(v) because their labels include the nutrient content claim "Good Source of Fiber," without including the required statement disclosing that the food is not low in total fat in immediate proximity to the claim, as required by 21 CFR 101.54(d) and 21 CFR 101.62(b)(2).

37.     The Products' labels bear "no trans fat" claim but fail to include the levels of monounsaturated fatty acids and polyunsaturated fatty acids in the nutrition information, as required by 21 CFR 101.9 (c)(2)(iii) and (iv).

38.     Defendant's Peanut Butter Dark Chocolate + Protein Product labels

include the nutrient content claims "+ protein" and "plus 7 g protein" on the principal display panel, but fail to include the percent daily value for protein as required when the label bears a nutrient content claim for protein as required by 21 CFR 101.9(c)(7)(i).

39.     In violation of 21 CFR 101.5(d), the Products' labels fail to accurately declare Defendant's place of business.

40.     California prohibits the misbranding of food in a way which parallels the FDCA through the "Sherman Law," Cal. Health & Saf. Code § 109875, *et seq.*  The Sherman Law provides that food is misbranded "if its labeling is false or misleading in any particular." *Id*.

41.     The Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the [FDCA]."  Cal. Health & Saf. Code, § 110100(a).

42.     Defendant's false and misleading representations and omissions are material, and likely to deceive reasonable consumers of the Products.

**C.**          **Plaintiffs' Reliance and Damages**

43.     Plaintiff purchased many of the Products in California over the past four years in reliance on Defendant's representations that the Products were All Natural, healthy, and non-GMO.

44.     Plaintiff was willing to pay for the Products because of the representations that they were All Natural, healthy, and non-GMO, and would not have purchased the Products, would not have paid as much for the Products, or would have purchased alternative products in absence of the representations, or with the knowledge that the Products contained artificial, synthetic, highly processed ingredients, and/or ingredients sourced from GMO crops.

45.     Plaintiff paid for All Natural Products, but received Products that were not in fact All Natural.

46.     The Products that Plaintiff received were worth less than the products for

which she paid.  By purchasing products in reliance on advertising that is false, Plaintiff has suffered injury in fact and lost money as a result of the unfair business practices alleged here.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff seeks relief in her individual capacity and as a class representative of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of the following Nationwide and California classes.

48.     The Nationwide Class is initially defined as follows:

> All persons residing in the United States who, from April 22, 2010 until the date notice is disseminated to the Class, purchased any of the Products (the "Nationwide Class").

49.     The California Class is initially defined as follows:

> All persons residing in the California who, from April 22, 2010 until the date notice is disseminated to the Class, purchased any of the Products (the "California Class").

50.     Excluded from each of the above Classes are Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, predecessors, successors, and assigns of Defendant.  Also excluded are the judges and Court personnel in this case and any members of their immediate families, as well as any person who purchased the Product for the purpose of resale.

51.     Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

a.     Numerosity.  Fed. R. Civ. P. 23(a)(1).  Each Class is so numerous that joinder of all members is unfeasible and not practicable.  While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that many thousands or millions of consumers have purchased the Products.

52.   Commonality.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to each Class, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

a.   Whether Defendant engaged in the conduct alleged herein;

b.   Whether Defendant's practices were deceptive, unfair, improper and/or misleading;

c.   Whether Defendant uniformly conveyed to the class that the Products were "All Natural;"

d.   Whether Defendant's claim that the Products are "All Natural" is true or false or likely to deceive a reasonable consumer;

e.   Whether Defendant uniformly conveyed to the class that the Products were "Non GMO;"

f.   Whether Defendant's claim that the Products are "Non GMO" is true or false or likely to deceive a reasonable consumer;

g.   Whether Defendant mislabled the Products as described in the FDA Warning Letter;

h.   Whether Defendant violated California Civil Code §§ 1750, *et seq.*;

i.   Whether Defendant violated California Business and Professions Code §§ 17200, *et seq.*;

j.   Whether Defendant violated California Business and Professions Code §§ 17500, *et seq.*;

k.   Whether Defendant breached an express warranty;

l.   Whether Defendant violated California's Sherman Law;

m.   Whether Defendant violated the Federal Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. § 301, *et seq.*

n.   The nature of the relief, including equitable relief, to which Plaintiffs and the Class members are entitled.

53.   Typicality.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Class.  Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

54.   Adequacy of Representation.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes.  Plaintiff's Counsel are competent and experienced in litigating class actions.

55.   Superiority of Class Action.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

56.   Injunctive and Declaratory Relief.  Fed. R. Civ. P. 23(b)(2).  Defendant's misrepresentations are uniform as to all members of the Classes.  Defendant has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or declaratory relief is appropriate with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION

### Breach of Express Warranty

57.   Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

58.   Defendant sold the Products in its regular course of business.

59.   Plaintiff and Class members purchased the Products.

60.   Defendant made a promise and representation to Plaintiffs and Class members that the Products were "All Natural," "Non GMO," and generally "Healthy."  Defendant's promises and representations constitute an express warranty that was provided to all consumers, and that became the basis of the bargain between Plaintiff and Class members on the one hand, and Defendant on the other.  Defendant gave these express warranties to Plaintiff and Class members in written form on the

packaging of the Products.

61.    Defendant's written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty.

62.    Defendant breached the warranty because the representations on the Products' packaging that the Products are ""All Natural," "Non GMO," and generally "Healthy" are false, as the Products did not contain the properties represented by Defendant.

63.    All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by Plaintiff and Class members who paid for the Products at issue.

64.    On April 15, 2014, Plaintiff provided notice to Defendant of its breaches of express warranty with respect to the Products.

65.    Defendant's breaches of warranty have caused Plaintiff and Class members to suffer injuries, paying for falsely labeled Products, and entering into transactions they would not have entered into for the consideration that Plaintiff and Class members paid.

66.    As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and Class members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the Products as promised and the value of the Products as delivered.

67.    As a result of the breach of these warranties, Plaintiff and Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## SECOND CAUSE OF ACTION

**Violation of Consumers Legal Remedies Act – Civil Code § 1750, *et seq*.**

68.    Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

69.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA") because Defendant's actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

70.     Plaintiff and each member of the California Classes are consumers as defined by California Civil Code §1761(d).

71.     The Products are goods within the meaning of Civil Code §1761(a).

72.     Defendant violated the CLRA in at least the following respects:

a.     in violation of §1770(a)(2), Defendant misrepresented the source of the Products as "All Natural" and "non GMO," when in fact the Products contained artificial, synthetic ingredients, and ingredients sourced from GMO crops;

b.     in violation of Section 1770(a)(5), Defendant represented that the Products have characteristics and benefits that they do not have;

c.     in violation of Section 1770(a)(7), Defendant represented that the Products are of a particular standard, quality, or grade when they are of another;

d.     in violation of Section 1770(a)(9), Defendant has advertised the Products with the intent not to sell them as advertised; and

e.     in violation of Section 1770(a)(16), Defendant has represented that the Products were supplied in accordance with previous representations when in fact they were not).

73.     Defendant knew, or should have known, that its representations and advertisements were false and misleading.

74.     Plaintiff notified Defendant in writing, by certified mail on April 15, 2015, of the violations alleged herein and demanded that Defendant remedy those violations.

75.     If Defendant fails to rectify or agree to rectify the false labels detailed above and give notice to all affected consumers within 30 days of the date of Plaintiff's written notice, Plaintiff will seek to amend this Complaint to seek actual,

punitive, and statutory damages pursuant to the CLRA.

76.    Plaintiff also seeks a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution, disgorgement, statutory damages, and any other relief that the Court deems proper.

### THIRD CAUSE OF ACTION

**California False Advertising Law – Cal. Bus. & Prof. Code § 17500, *et seq.***

77.    Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

78.    Defendant publicly disseminated untrue or misleading advertising or intended not to sell the Products as advertised in violation of California's False Advertising Law ("FAL"), Business & Professional Code § 17500, *et seq.*.

79.    Defendant committed the violations of the FAL alleged herein with actual knowledge, or in the exercise of reasonable care should have known, that its labels were untrue or misleading.

80.    Plaintiff reasonably relied on Defendant's representations and/or omissions made in violation of California Business & Professional Code § 17500, *et seq*.

81.    As a direct and proximate result of Defendant's violations, Plaintiff suffered injury in fact and lost money.

82.    Plaintiff, on behalf of herself and the Classes, seeks:  (a) injunctive relief in the form of an order requiring Defendant to cease the acts of unfair competition alleged herein and to correct its advertising, promotion and marketing campaigns; (b) full restitution of all monies paid by Plaintiff and all Class members because of Defendant's deceptive practices including, but not limited to, disgorgement of all profits derived from the sale of the Products; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure Section 1021.5.

## FOURTH CAUSE OF ACTION

**California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200,** *et seq.*

83.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

84.     Through the conduct alleged above, Defendant engaged in unlawful, unfair, and/or fraudulent conduct under California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.*

85.     Defendant's conduct is unlawful in that it violates the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*, California's False Advertising Law, California Business & Professions Code §§ 17500 *et seq.*, California's Sherman Law, the FDCA, and the federal regulations identified above.

86.     Defendant's conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff and Class members.  The harm to Plaintiff and Class members arising from Defendant's conduct outweighs any legitimate benefit Defendant derived from the conduct.  Defendant's conduct undermines and violates the stated spirit and policies underlying the Consumers Legal Remedies Act, the False Advertising Law, the Sherman Law, and federal laws and regulations as alleged herein.

87.     Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers.

88.     Plaintiff relied on Defendant's representations and omissions.

89.     As a direct and proximate result of Defendant's violations, Plaintiff and other Class members suffered injury in fact and lost money because they purchased the Products at the price they paid believing the labeling claims described above to be true.

90.     Plaintiff seeks:  (a) injunctive relief in the form of an order requiring Defendant to cease the acts of unfair competition alleged herein and to correct its advertising, promotion, and marketing campaigns; (b) full restitution of all monies paid

by Plaintiff and all Class members because of Defendant's deceptive practices including, but not limited to, disgorgement of all profits derived from the sale of the Products; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure Section 1021.5.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment in her favor and against Defendant, as follows:

A.      Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

C.      For an accounting by Defendant for any and all profits derived from the herein-alleged unlawful, unfair, and/or fraudulent conduct and/or business practices;

D.      Ordering Defendant to pay actual damages, restitution, and disgorgement of all money or property wrongfully obtained by Defendant by means of their herein-alleged unlawful, unfair, and fraudulent business practices, and equitable monetary relief to Plaintiffs and the other members of the Class;

E.      Recovery of the amounts by which Defendant has been unjustly enriched;

F.      Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

G.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes pursuant to California Code of Civil Procedure Section 1021.5 and the common law private attorney general doctrine;

H.      Ordering Defendant to pay both pre- and post-judgment interest on any

1    amounts awarded; and

2        I.     Ordering such other and further relief as may be just and proper.

3

4                              **JURY DEMAND**

5        Plaintiff demands a trial by jury of all claims in this Complaint so triable.

6

7

8

9    DATED:  April 22, 2015                Respectfully submitted,

10                                          **AHDOOT & WOLFSON, PC**

11                                          By:  /s/ Theodore Maya
                                            Tina Wolfson
12                                          Robert Ahdoot
                                            Theodore W. Maya
13
                                            1016 Palm Avenue
14                                          West Hollywood, California 90069
                                            Tel: 310-474-9111
15                                          Fax: 310-474-8585

16
                                            **BARBAT, MANSOUR & SUCIU PLLC**
17                                          Nick Suciu III (*pro hac vice* application
                                            forthcoming)
18                                          434 West Alexandrine #101
                                            Detroit, Michigan 48201
19                                          Tel: (313) 303-3472
                                            Email: nicksuciu@bmslawyers.com
20
                                            Counsel for Plaintiff
21                                            CHARITY BUSTAMANTE

22

23

24

25

26

27

28

---

**AFFIDAVIT OF COUNSEL**

I, Theodore Maya, declare as follows:

1.     I am an attorney with the law firm of Ahdoot & Wolfson, P.C.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.  This declaration is made pursuant to California Civil Code Section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.     Based on my research and personal knowledge, Defendant Kind LLC ("Defendant") does business within the State of California, and Plaintiff purchased Defendant's product within the State of California, including but not limited to within San Diego County, as alleged in this Class Action Complaint.

I declare under penalty of perjury under the laws of the United States and the State of California this 22nd day of April, 2015 in West Hollywood, California that the foregoing is true and correct.


/s/ Theodore Maya
Theodore Maya

Exhibit A

**U.S. Food and Drug Administration**
Protecting and Promoting *Your* Health

# KIND, LLC 3/17/15

 Department of Health and Human Services

Public Health
Food and Dru
College Park,

**WARNING LETTER**

**MAR 17, 2015**

**VIA OVERNIGHT DELIVERY**

Daniel Lubetsky, CEO
Kind, LLC
55 West 21st Street
New York, New York 10010-6809

Re: 437043

Dear Mr. Lubetsky,

The Food and Drug Administration (FDA) reviewed the labels for your Kind Fruit & Nut Almond & Apricot, Kind Fr
Plus Peanut Butter Dark Chocolate + Protein, and Kind Plus Dark Chocolate Cherry Cashew + Antioxidants prod
for these products direct the consumer to your website at the Internet address www.kindsnacks.com. We examin
Based on our review, we have concluded that these products are in violation of section 403 of the Federal Food,
[21 U.S.C. § 343] and its implementing regulations found in Title 21, Code of Federal Regulations, Part 101 (21 C
FDA regulations through links on FDA's home page at **http://www.fda.gov (http://www.fda.gov/)**.

The significant violations are as follows:

1.   Your Kind Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almond & Coconut, Kind Plus Peanut Butter Dark (
Dark Chocolate Cherry Cashew + Antioxidants products are misbranded within the meaning of section 403(r)(1)(/
(A)] because the product labels bear nutrient content claims, but the products do not meet the requirements to m

Under section 403(r)(1)(A) of the Act, a claim that characterizes the level of a nutrient which is of the type required
must be made in accordance with a regulation authorizing the use of such a claim. Characterizing the level of a n
product without complying with the specific requirements pertaining to nutrient content claims for that nutrient m
section 403(r)(1)(A) of the Act. Specifically:

a.   The labels of your Kind Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almond & Coconut, Kind Plus Peanut
and Kind Plus Dark Chocolate Cherry Cashew + Antioxidants products bear an implied nutrient content claim, be
suggesting that the product may be useful in maintaining healthy dietary practices, and those statements are ma
statements about nutrients. Specifically, the labels of the aforementioned products bear the claim "Healthy and t
in connection with statements such as:

- "good source of fiber,"

- "no trans fats,"

- "very low sodium" [Kind Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almond & Coconut, and Kind Plus Dar
  Antioxidants],

- "low sodium" [Kind Plus Peanut Butter Dark Chocolate + Protein],
- "+ antioxidants" [Kind Plus Dark Chocolate Cherry Cashew + Antioxidants],
- "50% DV antioxidants vitamins A, C and E"  [Kind Plus Dark Chocolate Cherry Cashew + Antioxidants],
- "+ protein" [Kind Plus Peanut Butter Dark Chocolate + Protein], and
- "7g protein" [Kind Plus Peanut Butter Dark Chocolate + Protein].

Additionally, your website at http://www.kindsnacks.com/about/ states, "There's healthy. There's tasty. Then there['s Kind.]... our snacks are pretty much the nirvana of healthful tastiness." In addition, your webpage for the Kind Peanut But[ter Dark Chocolate] product at www.kindsnacks.com/products/kind-store/buy-kind-bars/kind-plus/peanut-butter-darkchocolate-pro[tein.html states, "Peanut] Butter Dark Chocolate + Protein is a healthy and satisfying blend of peanuts and antioxidant-rich dark chocolate [with 7 grams of] protein, which promotes satiety and strengthens bones, muscles and skin."

However, none of your products listed above meet the requirements for use of the nutrient content claim "healthy[" under 21 CFR] 101.65(d)(2).

In accordance with 21 CFR 101.65(d)(2), you may use the term "healthy" as an implied nutrient content claim on [the label of a] food provided that the food, among other things, is "low saturated fat" as defined in 21 CFR 101.62(c)(2) [i.e., the[se products have a] of 1 g or less per Reference Amount Customarily Consumed (RACC) and no more than 15 percent of the calories [from fat].

According to the Nutrition Facts panels:

- The Kind Fruit & Nut Almond & Apricot product contains 3.5 g of saturated fat per 40 g of the food,
- The Kind Fruit & Nut Almond & Coconut product contains 5 g of saturated fat per 40 g of the food,
- The Kind Plus Peanut Butter Dark Chocolate + Protein product contains 3.5 g of saturated fat per 40 g of the f[ood, and]
- The Kind Fruit & Nut Dark Chocolate Cherry Cashew + Antioxidants contains 2.5 g of saturated fat per 40 g of [the food.]

These amounts exceed 1 g of saturated fat per 40 g RACC. These amounts also exceed the maximum of 15% o[f calories from fat in the] "low saturated fat" definition. Accordingly, your products do not meet the requirements for use of the nutrient co[ntent claim "healthy" on the] label [21 CFR 101.65(d)(2)]. Your products are thus misbranded within the meaning of section 403(r)(1)(A) of the A[ct.]

b.   Your Kind Peanut Butter Dark Chocolate + Protein and Kind Dark Chocolate Cherry Cashew + Antioxidants p[roducts use the term] (plus) as part of the product name but the products do not comply with the requirements governing the use of th[is claim. In addition, the] names of your Kind Peanut Butter Dark Chocolate + Protein and Kind Dark Chocolate Cherry Cashew + Antioxid[ants, "Plus, 7g] Protein" and "50% DV Antioxidant, vitamins A, C and E," respectively, meets the definition for a nutrient content [claim because it expressly describes the] product's level of vitamins and minerals, which are nutrients of the type required to be in nutrition labeling [21 CF[R 101.13(b)].

The term "plus" is defined in 21 CFR 101.54(e). This term may be used on the label or in labeling of foods to des[cribe the level of a nutrient (i.e.,] vitamins and minerals) in the food, provided that:
    (1)   the food contains at least 10 percent more of the Reference Daily Intake (RDI) or Daily Reference Valu[e (DRV) as] consumed than an appropriate reference food,
    (2)   where the claim is based on nutrients that are added to the food, that the fortification is in accordance [with the policy on fortification of] foods in 21 CFR 104.20, and
    (3)   the claim bears the required information for relative claims as described in 21 CFR 101.13(j)(2) and 10[1.54(e)(1).]

However, neither product label states the identity of the reference food and the percentage (or fraction) that the n[utrient differs from the] RDI or DRV declared in immediate proximity to the most prominent such claim. Accordingly, these products are m[isbranded within the meaning of] section 403(r)(1)(A) of the Act because they bear the nutrient content claim "plus" but do not comply with the reg[ulations governing this] claim.

c.   The product page for your KIND Peanut Butter Dark Chocolate + Protein product on your website at www.ki[ndsnacks.com/products/kind-] store/buy-kind-bars/kind-plus/peanut-butter-darkchocolate-protein.html includes the nutrient content claim "ant[ioxidant-rich";] however, the product and its labeling do not meet the requirements for the use of such claim that are set forth in [21 CFR 101.54.]

The phrase "antioxidant-rich" characterizes the level of antioxidant nutrients in the product and, therefore, this cl[aim is a nutrient content claim] under 21 CFR 101.13(b). Nutrient content claims using the term "antioxidant" must comply with the requirements [in 21 CFR 101.54(g). These] requirements state, in part, that for a product to bear such a claim, an RDI must have been established for each [of the nutrients that are the subject] of the claim [21 CFR 101.54(g)(1)], and these nutrients must have recognized antioxidant activity [21 CFR 101.54[(g)(2)]. Each nutrient] that is the subject of the claim must also be sufficient to qualify for the claim under 21 CFR 101.54(b), (c), or (e) [21 CFR 101.54(g)(3)]. For example, in] order to qualify for a "rich" or "high antioxidant" claim the product must contain 20 percent or more of the RDI fo[r each nutrient that has recognized] antioxidant activity, such as vitamin C, vitamin E, or beta carotene (when 10% or more of the RDI for vitamin A is [present as beta-carotene) in] accordance with 21 CFR 101.54(b). Based on the information in the Nutrition Facts label, this product contains 1[0% or more of the RDI for] vitamin E and 0% of vitamin C and vitamin A. Therefore this product does not qualify for a "rich in" claim and the [product is misbranded under] section 403(r)(2)(A)(i) of the Act.

2.   Your Kind Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almond & Coconut, Kind Plus Peanut Butter Dark C
Dark Chocolate Cherry Cashew + Antioxidants products are misbranded within the meaning of section 403(r)(2)(
(2)(A)(v)] because the labels include the nutrient content claim "Good Source of Fiber" without including the requi
food is not low in total fat in immediate proximity to the claim. Under 21 CFR 101.54(d), if a product label makes
dietary fiber (e.g., that the product is a good source of fiber) and the food is not "low" in total fat as defined in 21
must disclose the level of total fat per serving.

According to the Nutrition Facts panels:

- the Kind Fruit & Nut Almond & Apricot product contains 10 g of total fat per 40 g of the food,

- the Kind Fruit & Nut Almond & Coconut product contains 12 g of total fat per 40 g of the food; the Kind Plus F
  Protein product contains 13 g of total fat per 40 g of the food, and

- the Kind Fruit & Nut Dark Chocolate Cherry Cashew + Antioxidants contains 9 g of total fat per 40 g of the foo

These amounts exceed the maximum of 3 g of total fat per 40 g RACC in the "low fat" definition. Therefore these
and you are required to disclose this fact on the labels in immediate proximity to the claims that the products are

3.   Your Kind Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almond & Coconut, Kind Plus Peanut Butter Dark C
Dark Chocolate Cherry Cashew + Antioxidants products are misbranded within the meaning of section 403(q)(2)(
(A)] in that nutrition information is not disclosed in accordance with 21 CFR 101.9. Specifically,

    a.   Your labels bear a claim about fatty acids (i.e., "no trans fat") but fail to include the levels of monouns
    polyunsaturated fatty acids in the nutrition information as required by 21 CFR 101.9 (c)(2)(iii) and (iv).
    b.   Your Kind Plus Peanut Butter Dark Chocolate + Protein product label includes the nutrient content cla
    protein" on the principal display panel; however, the nutrition label fails to include the percent DV for prote
    bears a nutrient content claim for protein as required by 21 CFR 101.9(c)(7)(i).

4.   Your Kind Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almond & Coconut, Kind Plus Peanut Butter Dark C
Dark Chocolate Cherry Cashew + Antioxidants products are misbranded within the meaning of section 403(e)(1)
of the name and the place of business fails to completely or accurately declare the place of business as required
the statement "Kind, LLC, P.O. Box 705 Midtown Station, NY, NY 10018" which is provided on the label does not
the street address of your business does not appear in a current city or telephone directory. FDA is unable to det
your firm using a city or telephone directory and the address listed on the label.

The above violations are not meant to be an all-inclusive list of violations that may exist in connection with your p
responsibility to ensure that your products comply with the Act and its implementing regulations. You should take
violations. Failure to promptly correct the violations may result in regulatory action without further notice, includin

In addition, we offer the following comments:

- Your Kind Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almond & Coconut, Kind Plus Peanut Butter Dark Ch
  Dark Chocolate Cherry Cashew + Antioxidants product labels bear the claim"No Trans Fats," and we note tha
  not include a partially hydrogenated oil as an ingredient. Under section 403(r)(1)(A) of the Act, a nutrient conter
  made in accordance with a regulation authorizing the use of the claim in order for the food bearing such claim
  FDA has not defined the term "Contains No Trans Fat" by regulation, we announced in the *Federal Register* da
  41509) that we would likely consider exercising enforcement discretion for a trans-fat nutrient content claim th
  adequately substantiated, and not misleading.

Scientific evidence suggests that trans-fat acts in a similar manner to saturated fat with respect to raising LDL ch
(July 11, 2003). Higher total and LDL cholesterol levels are associated with increased risk of developing coronar
11, 2003). Under 21 CFR 101.13(h), if a food bears a nutrient content claim and also contains more than 13.0 gra
fat, 60 milligrams cholesterol, and 480 milligrams of sodium per reference amount customarily consumed (RACC
with a RACC of 30 grams or less or 2 tablespoons or less, per 50 grams), then the food must bear a statement d
exceeding the specified level is present in the food as follows: "See nutrition information for _____content" with
of the nutrient exceeding the specified level.

We intend to consider the exercise of our enforcement discretion for the use of the "Contains No Trans Fat" clain
claim includes a disclosure statement, in accordance with the requirements in 21 CFR 101.13(h). We will review s
basis. We note that your Kind Fruit & Nut Almond & Coconut product contains 5g of saturated fat per 40g but do
statement "See nutrition information for saturated fatcontent."

- Your Kind Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almond & Coconut, and Kind Plus Peanut Butter Dar
  labels include the statement beginning "Allergen information: Contains..."; however, this allergen statement is
  that these product labels correctly declare the allergen information in the ingredients lists in accordance with s
  a separate "Contains" statement is not required. However, if a separate "Contains" declaration is used, it mus

in the food and must use the names of the food sources as defined in sections 201(qq) and 403(w)(2) of the Ac Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almond & Coconut, and Kind Plus Peanut Butter Dark Chocola an ingredient; however, soy is not declared in the "Contains" statement. In addition, the term "milk" must be u generic term "tree nuts" cannot be used in place of the names of the specific tree nuts such as almonds, coco

- Your Kind Plus Dark Chocolate Cherry Cashew + Antioxidants product ingredient list does not meet the requir requires that the name of an ingredient shall be a specific name and not a collective (generic) name. This prod "mixed nuts," "dried fruits," and "vitamins" as multicomponent foods and declares the specific nuts, fruits, an regulations do not allow the collective listing of nuts, fruits, or vitamins.

- Your Kind Plus Peanut Butter Dark Chocolate + Protein product ingredient list does not meet the requirements the label declares the standardized multicomponent food, peanut butter, but does not declare the sub-ingredie 101.4(b)(2)(i). In accordance with 101.4(b)(2)(ii), if the ingredients of the standardized food are incorporated in t then the name of the standardized ingredient must not be listed.

- The required information that appears on the information panels of your Kind Fruit & Nut Almond & Apricot, Ki Kind Plus Peanut Butter Dark Chocolate + Protein, and Kind Plus Dark Chocolate Cherry Cashew + Antioxidan the requirements in 21 CFR 101.2(e) because all of the information does not appear in one place without interv describing your brand that comes between the ingredient list and the name and place of business is an examp

- Your Kind Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almond & Coconut, Kind Plus Peanut Butter Dark Ch Dark Chocolate Cherry Cashew + Antioxidants ingredient statements declare "non GMO glucose." This is not name for glucose syrup or dried glucose syrup in accordance with 21 CFR 101.4 and 168.120 or 168.121.

- The name and place of business declaration on your Kind Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almo Butter Dark Chocolate + Protein, and Kind Plus Dark Chocolate Cherry Cashew + Antioxidants products does required in 21 CFR 101.5(d). The street address may only be omitted if it is shown in a current city directory or search for your firm yielded several different street addresses in New York City; therefore, it is not clear which considered your place of business.

- Your Kind Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almond & Coconut, Kind Plus Peanut Butter Dark Ch Dark Chocolate Cherry Cashew + Antioxidants product labels do not include an appropriate statement of iden


Please respond to this letter within 15 working days from receipt with the actions you plan to take in response to explanation of each step being taken to correct the current violations and prevent similar violations. Include any that correction has been achieved. If you cannot complete corrective action within 15 working days, state the rea within which you will complete the corrections.

You should direct your written reply to Carrie Lawlor, Food and Drug Administration, Center for Food Safety and Branch Parkway, Office of Compliance (HFS-608), Division of Enforcement, College Park, Maryland 20740-3835. regarding this letter, you may contact Ms. Lawlor via email at **carrie.lawlor@fda.hhs.gov (mailto:carrie.lawlor@**

Sincerely,

/S/
William A. Correll, Jr.
Director
Center for Food Safety
    and Applied Nutrition


cc: FDA New York District

JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
CHARITY BUSTAMANTE, individually
and on behalf of all others similarly situated,

**DEFENDANTS**
KIND LLC, a Delaware Limited Liability
Company, and DOES 1-10,

(b)  County of Residence of First Listed Plaintiff   Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

(c)  Attorneys *(Firm Name, Address, and Telephone Number)*
AHDOOT & WOLFSON, P.C.
1016 Palm Avenue, West Hollywood, CA 90069, (310) 474-9111
twolfson@ahdootwolfson.com, tmaya@ahdootwolfson.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☒ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding
☐ 2   Removed from State Court
☐ 3   Remanded from Appellate Court
☐ 4   Reinstated or Reopened
☐ 5   Transferred from Another District *(specify)*
☐ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
False advertising

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
5,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE   Cormac J. Carney
DOCKET NUMBER   CD Cal 15-cv-00615

DATE
04/22/2015

SIGNATURE OF ATTORNEY OF RECORD
/s/ Theodore Maya

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

Print       Save As...       Reset

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.